USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __12/16/2016__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ESTER KELEN, individually and on behalf of
all others similarly situated,

                              Plaintiffs,

-v-

NORDSTROM, INC. and NORDSTROM FSB d/b/a
NORDSTROM BANK,

                              Defendants.

------------------------------------------------------------X

16 Civ. 1617 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff Ester Kelen brings this putative class action against Nordstrom, Inc. and Nordstrom FSB d/b/a Nordstrom Bank (collectively, "Nordstrom"), alleging that Nordstrom's disclosures in connection with its credit card accounts violated the Truth in Lending Act ("TILA" or "the Act"), 15 U.S.C. §§ 1601 *et seq.* In particular, Kelen alleges that, in an account-opening disclosure that Nordstrom provided to her, Nordstrom inaccurately or incompletely disclosed information regarding fees for late payments and for payments returned by the consumer's financial institution.

Nordstrom moves to dismiss the Second Amended Complaint ("SAC") under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and under Rule 12(b)(6), for failure to state a claim. For the reasons that follow, the Court grants Nordstrom's motion to dismiss under Rule 12(b)(1).

**I.    Background**

## A. Facts[1]

On March 3, 2015, Kelen opened an in-store credit account with Nordstrom. SAC ¶¶ 9, 12. Kelen claims Nordstrom made unlawful disclosures to her with respect to the fees for (1) payments returned by the consumer's financial institution, and (2) late payments. The Court describes, in turn, the bases for these two claims.

### 1. Failure to Properly Disclose the Fees for Returned Payments

Nordstrom's account-opening disclosure contained a table summarizing key account terms (the "Schumer Box") and a more detailed explanation of the account terms (the "Cardholder Agreement"). *Id.* ¶ 13; *see* Dkt. 24 ("Def. Br.") at 9. The Schumer Box disclosed that the fee for "Returned Payments" was "$25." SAC ¶ 14. The Cardholder Agreement also disclosed that the fee for payments returned by the consumer's financial institution was $25. *Id.* ¶ 15.

Kelen alleges that Nordstrom failed to disclose the "complete computation method for the returned payment fee," including the fact that such a fee could, depending on the circumstances, be less than $25. That is because, Kelen notes, TILA and implementing Regulation Z provide that "an issuer may not charge a returned-payment fee in excess of the minimum periodic payment due immediately prior to the date on which the payment is returned to the card issuer." *Id.* ¶ 42–43 (citing 15 U.S.C. § 1665d(b); 12 C.F.R. § 1026.52(b)(2)(i); and 12 C.F.R. Part 1026 Supp. I, Cnt. 52(b)(2)(i)-2). Nordstrom's failure to disclose this possibility, Kelen alleges,

---

[1] The Court draws these facts principally from the SAC, Dkt. 21, and the attached exhibits. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). The Court accepts all factual allegations in the SAC as true, drawing all reasonable inferences in Kelen's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

2

violated TILA, 15 U.S.C. § 1637(a)(5) and its implementing regulation, 12 C.F.R. § 1026.5(b)(3), which require disclosure of the computation method of fees.

In so alleging, Kelen does not claim that Nordstrom ever charged her a returned payment fee. She asserts that she has standing to bring a TILA claim challenging Nordstrom's allegedly errant disclosure because, to her as a recipient, it "constituted a concrete harm and created a material risk of concrete harm to Kelen and to other credit consumers." SAC ¶ 44.

### 2. Failure to Properly Disclose the Fees for Late Payments

Kelen separately claims that the account-opening disclosure errantly disclosed the fees for late payments. The Schumer Box stated that the fee amount for a late payment would be "Up to $35." Def. Br. at 9. The Cardholder Agreement included a "Late Payment Fee" provision stating, in its entirety, as follows: "My Credit Card Account will be subject to a Late Payment Fee of up to $35 for any late or missed Minimum Payment Due." *Id.* ¶ 16.

As to this disclosure, Kelen similarly alleges that Nordstrom failed to disclose the "complete computation method for the late payment fee," including certain limitations on the maximum fee. *Id.* ¶¶ 49–52. Specifically, Kelen faults Nordstrom for not disclosing that TILA and Regulation Z provide that "an issuer may not charge a late payment fee in excess of the minimum periodic payment due immediately prior to assessment of the late payment fee." *Id.* ¶ 49 (citing 15 U.S.C. § 1665d(b); 12 C.F.R. § 1026.52(b)(2)(i); and 12 C.F.R. Part 1026 Supp. I, Comment 52(b)(2)(i)-1). And, Kelen notes, under Regulation Z's "safe harbor provision for late payment fees," which Kelen contends that Nordstrom has adopted, a lower maximum fee applies where an account "has no history of late payments in the prior six billing cycles." SAC ¶¶ 50–51. Kelen argues that Nordstrom's failure to disclose the circumstances under which the late

3

payment fee might be lower than $35 violated TILA, 15 U.S.C. § 1637(a)(5) and 12 C.F.R. § 1026.5(b)(3), which require disclosure of the computation method of fees. *See id.* ¶¶ 49–50.

As to this claim, too, Kelen does not claim that Nordstrom charged her any such fee. She claims injury on the ground that Nordstrom's errant disclosure "constituted a concrete harm and created a material risk of concrete harm to Kelen and to other credit consumers." *Id.* ¶ 53.

### B. Procedural History

On March 2, 2016, Kelen filed a Complaint, claiming that Nordstrom's two failures to make mandatory disclosure failures violated TILA. Dkt. 1. The claim was brought as a putative class action, and sought statutory damages on behalf of Kelen and all members of the putative class, together with costs and reasonable attorney fees.

On May 9, 2016, Kelen filed a First Amended Complaint ("FAC"). Dkt. 10. On June 20, 2016, Nordstrom filed a motion to dismiss the FAC, Dkt. 18, a supporting memorandum of law, Dkt. 19, and the accompanying Declaration of David J. Fioccola, Dkt. 20.

On July 8, 2016, Kelen filed the SAC. Dkt. 22. On August 1, 2016, Kelen filed a motion to dismiss the SAC, Dkt. 23, and a supporting memorandum of law ("Def. Br."), Dkt. 24. On August 29, 2016, Kelen filed an opposing brief ("Pl. Br."). Dkt. 30. On September 22, 2016, Nordstrom filed a reply ("Def. Reply Br."). Dkt. 34.

### III. Discussion

In 1969, Congress enacted TILA, which aimed to promote the informed use of credit through fair and transparent lending practices. *See* 15 U.S.C. § 1601(a); *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 198 (2011). Rather than regulate the substantive terms on which creditors can offer or manage a financial product, TILA primarily requires "meaningful disclosure." *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555 (1980); *Gambardella v. G.*

4

*Fox & Co.*, 716 F.2d 104, 110 (2d Cir. 1983). TILA regulates disclosures by a creditor to a consumer throughout their financial relationship: during solicitation and application, at signing, during each billing cycle, and at renewal. *See* 15 U.S.C. § 1637(a)–(d). TILA "is to be construed liberally" in favor of the consumer. *See Schnall v. Marine Midland Bank*, 225 F.3d 263, 267 (2d Cir. 2000); *N.C. Freed Co. v. Board of Governors of the Fed. Reserve Sys.*, 473 F.2d 1210, 1214 (2d Cir. 1973).

Relevant here, TILA requires that "[b]efore opening any account under an open end consumer credit plan, the creditor shall disclose to the person whom credit is to be extended . . . [i]dentification of other charges which may be imposed as part of the plan, and their method of computation, in accordance with regulations of the Bureau [of Consumer Financial Protection]." *Id.* § 1637(a). Accordingly, creditors must disclose, "[f]or charges imposed as part of an open-end (not home-secured) plan, the circumstances under which the charge may be imposed, including the amount of the charge or an explanation of how the charge is determined." 12 C.F.R. § 1026.6.[2]

Nordstrom seeks dismissal of Kelen's TILA claims on two grounds: that she (1) lacks Article III standing, warranting dismissal under Rule 12(b)(1), and (2) fails to state a claim, warranting dismissal under Rule 12(b)(6). For the reasons below, the Court holds that Kelen lacks standing, and therefore dismisses this case under Rule 12(b)(1) for lack of subject matter jurisdiction. In light of this ruling, the Court has no occasion to consider whether the Second Amended Complaint fails to state a claim.

A.     **Article III Standing**

---

[2] Authority to "prescribe regulations to carry out the purposes" of the Act is today vested in the Consumer Financial Protection Board. 15 U.S.C. § 1604. These implementing regulations are known as Regulation Z. *See* 12 C.F.R. §§ 226 *et seq.*

5

To survive a motion to dismiss under Rule 12(b)(1), a district court must have "the statutory or constitutional power to adjudicate" the matter at issue. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "Defects in subject matter jurisdiction . . . may be raised at any time during the proceedings." *Fuller v. Bd. Of Immig. Appeals*, 702 F.3d 83, 88 (2d Cir. 2012 (internal quotation marks omitted). "[B]ecause standing is necessary to [the Court's] jurisdiction, [the Court is] obliged to decide the question at the outset." *Strubel v. Comenity Bank*, No. 15-528-CV, 2016 WL 6892197, at *3 (2d Cir. Nov. 23, 2016).

"To satisfy the irreducible constitutional minimum of Article III standing, a plaintiff must demonstrate (1) injury in fact, (2) a causal connection between that injury and the complained-of conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." *Id.* (internal quotation marks omitted). Here, Nordstrom argues that Kelen fails to adequately plead the first element—that she suffered an injury in fact. Def. Br. at 12. To demonstrate injury in fact, a plaintiff bears the burden of establishing three elements: "[1] an invasion of a legally protected interest [2] which is concrete and particularized, and [3] actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted).

As pled, Kelen has a legally protected interest, because, as noted, TILA, in 15 U.S.C. § 1637(a)(7), "obligates a creditor to make specified disclosures 'to the person to whom credit is to be extended,'" *Strubel*, 2016 WL 6892197, at *3, and the Court assumes, *arguendo*, that Nordstrom's disclosures fell short of what TILA required.

Kelen's standing thus turns on whether she suffered an injury to that interest that is sufficiently "concrete and particularized" and "actual or imminent" to establish Article III standing. To demonstrate a concrete injury, Kelen must show that it "actually exist[s],"

6

meaning it is "real, and not abstract." *Id.* (internal quotation marks omitted). To demonstrate a particularized injury, Kelen must show that, "as to each of her [two] TILA disclosure challenges, [Nordstrom's] actions (or inactions) injured her in a way distinct from the body politic." *Id.*

Significant here, a plaintiff cannot demonstrate that she has suffered a concrete injury by alleging a statutory violation alone. "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). Nonetheless, harm need not be tangible to satisfy the requirement of concreteness. *Id.* A statutory violation can, by itself, constitute a concrete injury for the purposes of Article III standing where the plaintiff establishes that the violation resulted in a "risk of real harm" to concrete interests of the plaintiff's that Congress, in enacting the statute, sought to protect. *Id.*; *see Strubel*, 2016 WL 6892197, at *5 (even where Congress has accorded procedural rights to protect a legal interest, a plaintiff may fail to demonstrate concrete injury where violation of the procedure at issue presents no risk of real harm to that underlying interest").

As the Second Circuit recently explained in *Strubel*, which also involved claims under TILA, the dissemination of incorrect information to a plaintiff does not alone create a risk of real harm to the plaintiff. Rather, Article III requires some indication that the inaccuracy would harm the plaintiff, and some "misinformation may be too trivial to cause harm or present any material risk of harm." *Id.* at *4 (internal quotation marks omitted).

Kelen's pleadings fall short of so alleging. Her SAC does not allege any tangible injury to herself. She therefore bears the burden of demonstrating a risk of harm to a concrete interest. But the SAC is barren of factual allegations that would support such a finding. Kelen's claim instead begins and ends with the fact of the alleged TILA violation. The SAC does not claim that she changed her behavior in any way based on Nordstrom's allegedly insufficient

7

disclosures as to the circumstances under which fees for late or returned payments might fall short of the disclosed maximum fees. It does not allege that Nordstrom ever charged her either a late payment fee or a returned payment fee, let alone an improperly calculated one. Indeed, the SAC does not allege that Kelen ever read the disclosures she challenges relating to such fees.

In light of these spartan pleadings, Kelen's claim to have suffer a concrete, particularized injury falls short of the standards set by the case law, which requires alleging more than the mere fact of a violation of a disclosure statute for a plaintiff to plead a material risk of harm.

The Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, although involving a different statute, is instructive. The Court there analyzed whether a consumer had standing to bring a claim under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, which "seeks to ensure 'fair and accurate credit reporting,'" 136 S. Ct. at 1545 (quoting § 1681(a)(1)). FCRA requires consumer reporting agencies to, *inter alia*, "'follow reasonable procedures to assure maximum possible accuracy of' consumer reports," *id.* (quoting § 1681e(b)). Robins, the plaintiff consumer in *Spokeo*, alleged that a consumer reporting agency had failed to follow procedures mandated under the FCRA and, as a result, had disseminated inaccurate information regarding Robins.

The Supreme Court held that the plaintiff could not "satisfy the demands of Article III by alleging a bare procedural violation." *Id.* at 1550. As the Court explained, "[a] violation of one of the FCRA's procedural requirements may result in no harm." *Id.* A procedural violation might not actually lead to an inaccuracy, and, even if an inaccuracy did result, that inaccuracy might not actually injure the plaintiff. *Id.* As an example of a harmless inaccuracy, the Court stated, "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id. Spokeo* underscores that Kelen's pleading of a statutory

violation alone, even one that arguably resulted in an inaccuracy insofar as Nordstrom did not specify that lesser penalty fees might apply in some circumstances, does not satisfy her Article III burden of demonstrating a concrete injury in fact.

The Second Circuit's decision last month in *Strubel v. Comenity Bank* points to the same conclusion. There, the Circuit addressed when, under *Spokeo*, a consumer would have Article III standing to bring a TILA violation claim. The plaintiff in *Strubel* brought four such claims. Analyzing in each instance whether the plaintiff had alleged concrete harm *beyond* the violation itself, the Circuit held she had standing to bring only two. *See Strubel*, 2016 WL 6892197, at *5–9 (dismissing claims for which plaintiff "fail[ed] otherwise to carry her burden to proffer evidence sufficient to manifest concrete injury").

Notable here, the Circuit dismissed claims involving the alleged nondisclosure of the creditor's obligations to a consumer who reported a billing error, emphasizing that the plaintiff had never in fact reported a billing error. *Id.* at *7. The Circuit explained that "even where, as here [in the context of TILA], Congress has statutorily conferred legal interests on consumers, a plaintiff only has standing to sue if she can allege concrete and particularized injury to that interest." *Id.* at *3. Such a "bare procedural violation," the Circuit explained,

> presents an insufficient risk of harm to satisfy the concrete injury requirement of standing, particularly where . . . plaintiff fails to show either (1) that [a creditor's nondisclosure] caused her to alter her credit behavior from what it would have been upon proper notice, or (2) that . . . the creditor failed to honor [nondisclosed] obligations to consumers.

*Id.* at *8. *Strubel*'s reasoning is resonant here, because Kelen fails to allege that Nordstrom's allegedly faulty disclosure caused her to alter her behavior in any way, or that Nordstrom violated any obligation to her in connection with it.

9

A final instructive recent decision, applying *Spokeo* to a TILA claim, is *Jamison v. Bank of America, N.A.*, No. 16 Civ. 422 (KJM) (AC), 2016 WL 3653456 (E.D. Cal. July 7, 2016). The plaintiff claimed that the defendant's failure, in violation of TILA, to disclose the existence of undisbursed insurance funds in payoff statements, had caused her concrete harm. *Id.* at *4. The plaintiff claimed that this injury arose from the fact that "the payoff statements would not provide an accurate view of the outstanding balance if the class members were to apply for a loan modification or refinancing, if they wished to fully satisfy their loan obligation, or if the Bank attempted foreclosure." *Id.* (internal quotation marks and alteration omitted). The district court rejected this argument. The plaintiff, it noted, neither "allege[d] those circumstances ever arose" or "provide[d] support for finding the risk of such consequences sufficient to establish a concrete injury." *Id.*

Kelen does not cite any contrary authority, *i.e.*, case law tending to suggest that her bare allegation of having received Nordstrom's allegedly errant disclosures worked a concrete injury on her.[3] Instead, she falls back on the conclusory claim that Nordstrom's allegedly violative disclosures "constituted a concrete harm." SAC ¶¶ 44, 53. But conclusory claims of harm do not suffice. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation . . . .'" (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *Jamison*, 2016 WL 3653456, at *4 ("The complaint . . . pleads only conclusory allegations of harm that the court need not accept as true").

---

[3] Kelen's theory of concrete harm is further undermined by the Federal Reserve Board's guidance with respect to these same provisions: "A consumer who incorrectly assumes that a $35 penalty fee will be imposed for all violations will not be harmed if—when a violation actually occurs—a lower penalty fee is imposed." *Truth in Lending*, 75 Fed Reg. 37526-01, 37562 (June 29, 2010).

10

Accordingly, the Court holds, Kelen has not pled a concrete injury in fact and therefore lacks standing.[4] The Court must therefore dismiss her claims for lack of subject matter jurisdiction.

B. **Failure to State a Claim**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint is properly dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Accordingly, a district court must accept as true all well-pleaded factual allegations in the complaint, and draw all inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Here, Nordstrom makes a substantial argument that the SAC does not state a claim. However, because the Court has held that Kelen lacks standing to pursue her claims, so as to require dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction, the Court has no occasion to reach Nordstrom's arguments under Rule 12(b)(6). *See, e.g., Orenstein v. Compusamp, Inc.*, 19 Fed. R. Serv. 2d 466 (S.D.N.Y. 1974) ("Since we find that plaintiff lacks standing, we need not reach the question[] of . . . failure to state a claim upon which relief may

---

[4] It is by no means clear that Kelen's claimed injury would satisfy the separate requirement of a particularized injury, particularly insofar as, under Kelen's theory, any recipient of the account-opening disclosures at issue would have Article III standing. But, given the absence here of a concrete injury, the Court need not reach that issue.

11

be granted."); *see also Price v. Saugerties Cent. Sch. Dist.*, 305 F. App'x 715, 716 (2d Cir. 2009) ("Because we conclude . . . that the plaintiffs lack standing, we need not reach the other ground for disposition.").

## CONCLUSION

For the foregoing reasons, Nordstrom's motion to dismiss for lack of standing is granted. The Clerk of Court is directed to terminate the motions pending at Dkts. 18 and 23, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: December 16, 2016
       New York, New York